[PHILADELPHIA, MARCH 29, 1833.]

## HOUGH *against* DOYLE.

### IN ERROR.

A mutilated piece of paper, which appears to have been torn out of a book, in which the name neither of the plaintiff nor defendant appears, which contains no charges against the defendant, and which is unintelligible without explanation by the plaintiff, is not admissible in evidence, as a book of original entries.

The act of an agent does not bind his principal, unless it be proved that it was done during the agency, and was within the scope of his authority.

How far the acts and declarations of an agent bind his principal.

THE record of this case being returned on a writ of error from the Court of Common Pleas of *Northampton* County, accompanied by two bills of exceptions to evidence, it appeared that it came before the court below, on an appeal from a justice of the peace, before whom an action was brought by *John Doyle*, the plaintiff below and defendant in error, against *Joseph Hough*, for work and labour done by the former for the latter, on a canal.

On the trial in the court of Common Pleas, the plaintiff was sworn in support of what he produced on his book of original entries, and testified that it was his account of work done on the canal, for *Joseph Hough*; that he kept an account of it as he worked, and that what he produced exhibited his original entries of his transactions with *Hough*. On his cross-examination, he stated, that the paper was in his hand-writing; that it was the first place in which he entered his work, which he never set down upon a slate; that it was never three days from the time he did the work until he set it down; that he could not tell what had become of the rest of the book; it might be at home; that he had a book, but could not tell how much there was of it; that there was none of it of use but-what was produced, and he could not tell when that was torn out.

His counsel then offered in evidence the paper referred to, which was part of a loose sheet, which had some appearance of having been torn out of a book. It is impossible accurately to describe this paper, but its character may be understood from the objections made by the counsel for the defendant below, to its being admitted in evidence. They were as follows:

1. That it is not a book of original entries.

2. That neither the plaintiff's nor defendant's name is in it, nor any charges against the defendant; that it is unintelligible without explanation, which the plaintiff is incompetent to give.

3. That it is mutilated, and not the entire book, and shows nothing in support of the issue.

The court admitted the evidence, observing that any imperfections

(Hough *v.* Doyle.)

in it, were matters for the jury, in determining the credit to be given to it.

To this opinion, exception was taken by the counsel for the defendant.

The plaintiff then produced a witness, who testified, that he knew that *Doyle* had worked on *Hough's* job, but he could not say how long; he was there a considerable time; that he saw *Horace Egelston* there; he hired and paid the witness; he attended to the hands, and went round to see that the work was done as it ought to be done; that *Silas Hough* was not there at the first offstart; *Joseph Hough* might have been there at the first, off and on, but was not there regularly. On his cross-examination he said, that *Silas Hough* did not commence until the store commenced; he was clerk in the store; *Egelston* employed the hands in the offstart; he was chief employer of hands; when he was not there, *Silas Hough* employed hands sometimes; the witness had known *Egelston* to discharge hands; the concern was under *Egelston's* management, at least the witness considered it so; *Joseph Hough* was not there constantly; the witness saw him there off and on; *John Doyle* worked at blacksmithing; the latter part of the time he worked there, his family lived in a house there. The witness then proved the hand-writing of *Horace Egelston*, to a paper produced and offered in evidence by the plaintiff's counsel, which was in these words:

" Take the season from the comencement to the first of April 16 dollars per month and then for three months or until the job is finished 19.50 cents per month and when your family comes we will alow you 1.75 cents per week for board."

" *H. Egelston.*"

The admission of this paper was objected to by the counsel for the defendant for the following reasons:

1. That *Egelston* was not proved to have been the defendant's agent; that the paper was not proved to have been given during the alleged agency, or to have been within the scope of his authority.

2. That it was without date, and mentioned neither the name of the plaintiff nor of the defendant, nor any other matters showing its connexion with the subject in dispute.

3. That *Egelston* himself should have been produced, or his absence accounted for.

The court overruled the objections, and admitted the evidence, and exception was again taken to their opinion.

*J. M. Porter*, for the plaintiff in error.

1. The paper admitted by the court below as a book of original entries, had not that character upon its face, and could be shown to be such a book only by the oath of the plaintiff, which was incompetent. The distinctive character of the evidence as a book of original

(Hough *v.* Doyle.)

entries must first be shown to the court, and if it possess that character, the jury are to decide upon its errors and imperfections, but here, the court submitted to the jury the determination of a question which belonged to itself. There is no case to support the admissibility of an entry which upon its face does not import a charge, and which can have that effect given to it only by the explanation of the party himself.' Unconnected scraps of paper are not evidence. *Thompson* v. *M'Kelvey,* 13 *Serg. & Rawle,* 127. Here is a mere scrap, more like a check roll than any thing else, charging no one, containing no name, and which is sworn not to contain the whole account, but to be part of a book, of which the remainder may perhaps be at home, but which the party undertakes to say is all that is of any use. If a party is to be allowed to give his own explanations, and by them apply his charges to the defendant, he may, by the same process, make every individual in the country his debtor. *Poultney* v. *Ross,* 1 *Dall.* 238. *Ducoign* v. *Schreppel,* 1 *Yeates,* 347. *Wilmer* v. *Israel,* 1 *Browne,* 257. *Summers* v. *M'Kim,* 12 *Serg. & Rawle,* 411. *Kelly* v. *Holdship,* 1 *Browne,* 36. *Prime* v. *Smith,* 4 *Mass. R.* 455.

2. There was no evidence that *Egleston* was the agent of *Hough.* For ought that appears, *Hough* may have underlet the contract, and *Egelston* may have been working on his own account. If *Egelston* was the agent of *Hough,* it ought to have been shown that the paper offered in evidence was given during the agency, and that it was within the scope of his power to give it; yet there is nothing to show when, how, or why it was given. It is without date, is directed to no one, and is not signed by *Egelston* as agent of *Hough* or of any one else. Supposing *Egelston* to have been the agent of *Hough,* the paper to have been signed by him during the agency, and to refer to the plaintiff, of which there was no proof, it is nothing more than the declaration of the agent beyond the limits of his power, and does not bind the principal. *Lessee of Cluggage* v. *Swan,* 4 *Binn.* 150. *Cutbush* v. *Gilbert,* 4 *Serg. &. Rawle,* 556. *Hubbel* v. *Elmes,* 7 *Wendell,* 446. *Blight* v. *Astly,* 1 *Peters, C. C. R.* 15. *Shelhamer* v. *Thomas,* 7 *Serg. & Rawle,* 109. *Magill* v. *Kauffman,* 4 *Serg. & Rawle,* 321. *Roscoe on Evid.* 29.

*Brooke,* for the defendant in error.—1. Upon the evidence there was no doubt that *Doyle* worked as a blacksmith upon the contract of *Hough.* The book was therefore evidence to show how long he had worked, and it was properly submitted to the jury with instructions to decide upon its imperfections. It was not the case of a man keeping a book with various persons, but an account of time with a single individual. The necessity of the case is the foundation of the rule on which such evidence is admitted, and a stricter rule ought not to be applied to an illiterate labourer than to a merchant. The necessity which regulates this sort of evidence has relation to the nature of the business in which the party is engaged, and also to his capacity to keep regular books. If a claim like that of the plaintiff below

(Hough *v.* Doyle.)

cannot be proved in the manner proposed, it must be lost, for it can be proved in no other way.　A labourer cannot call upon others to prove how long he worked, and an account of such work cannot be kept in a more satisfactory mode than this, which is the one universally adopted by those who are engaged in that line of business.　In the case of *Curren* v. *Crawford,* 4 *Serg. &. Rawle,* 3, no one could understand the entries without explanation, and upon the principle of that case, of *Sterrett* v. *Bull,* 1 *Binn.* 237, and of *Kaughley* v. *Brewer,* 16 *Serg. & Rawle,* 133, the evidence in question was admissible.

2. All the circumstances of the case showed the agency of *Egelston.* The evidence of it was submitted to the jury, and if they thought the agency not proved, they, of course, would have given no weight to the paper.　If it was proved, the paper bound the principal, as it was immediately connected with the business of the agency.

The opinion of the court was delivered by

Rogers, J.—The plaintiff in error has assigned several reasons, any one of which is sufficient, against the admission of the paper, purporting to be a book of original entries : That it is not a book of original entries: That neither the plaintiff nor defendant's name appears on the paper, nor any charges against the defendant : That it is unintelligible without explanation, which the plaintiff is incompetent to give, and that it is mutilated, and is not the entire book.

We are further of opinion, that the court were in error, in admitting the paper signed, *H. Egelston;* because, granting *Egelston* to have been the defendant's agent, yet there was no proof that the paper was given during the agency, or that it was within the scope of his authority.　The paper is without date, and mentions neither the name of the plaintiff nor defendant, nor is there any thing in proof, which shows that it has any connexion with the matter in controversy.

The general rule is this.　When it is proved that one is the agent of another, whatever the agent does, or says, or writes, in the making of a contract, as agent, is admissible in evidence against the principal, because it is part of the contract which he makes for his principal, and which, therefore, binds him, but it is not admissible as the agent's account of what passes.　For example, the declaration of a servant, employed to sell a horse, is evidence to charge the master with warranty, if made at the time of sale ; if made at any other time, the facts must be proved by the servant himself.　The admissions of an agent, not made at the time of the transaction, but subsequently, are not evidence.　Thus, the letters of an agent to his principal, containing a narrative of the transaction, in which he had been employed, are not admissible in evidence against the principal. *Vide Roscoe on Evidence,* 29, in note, and the authorities there cited.

Judgment reversed, and a *venire de novo* awarded.