## Kelly Estate.

Argued January 11, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Thomas B. Noonan,* with him *Noonan & Pace,* for appellant.

*W. D. Balitas,* for appellee.

154

OPINION BY MR. JUSTICE BELL, April 18, 1960:

This case was permeated with unfair leading ques-tions, incompetent testimony, and confusion.

This is a claim against a decedent's estate for money allegedly due under an express oral contract entered into in December 1944, between Marie Schuster, the claimant, and the decedent, under which the claimant was to furnish room and board and the decedent was to pay her for the same $50 a month.

Kelly died intestate in November, 1956, leaving an estate of approximately $8,000 and five daughters and two sons. The lower Court entered a Decree allowing the Schuster claim in the amount of $4300,* and after hearing exceptions to the adjudication and decree, dismissed the exceptions and made the decree absolute. This appeal by the administratrix of the estate followed.

Claimant by her own testimony proved the above mentioned express oral contract and her claim was supported by her daughter and a neighbor. The administratrix of the estate proved (a) by cross-examination of the claimant that she and the decedent lived together; and (b) that decedent had rented and paid for a room in another apartment house in Pottsville for all these years and that witnesses had visited him there.

Counsel for the estate objected to the claimant testifying because she was an adult person. After she had testified to the alleged contract, he objected to her competency under the dead man's rule. He undoubtedly was confused. Claimant then identified and offered in evidence an alleged book of original entries upon which she placed great reliance. This was admitted over appellant's objection and relied upon by the hearing Judge to support her claim. The book in

---

* The net result is that each of Kelly's children will receive approximately $500 from their father's estate.

question was a little note book which showed that on and off for the period of 12 years claimant had received from some unnamed person $5 or $10, with the dates of payment. There was no notation of who made the payments or what the payments were for, or the total amount; these defects were attempted to be cured by claimant's parol evidence. Moreover, claimant admitted that the total shown in the note book did not balance with her present claim. This book was not a book of original entries as that term is known to the law and its admission constituted reversible error. *Wall v. Dovey*, 60 Pa. 212; *Pringle v. Neff*, 112 Pa. Superior Ct. 547, 550, 551, 172 A. 26.

Since there is to be a new trial we need not decide whether several other contentions of appellant were sufficiently meritorious to warrant the grant of a new trial. It will suffice to say that (a) the claim is not barred by proof of (alleged) meretricious relationship; and (b) there was no laches—see *Grote Trust*, 390 Pa. 261, 135 A. 2d 383; and (c) counsel for claimant must refrain from highly unfair leading questions which put the right answer in claimant's mouth. For example, claimant was asked: "Q. . . . what were the terms of his room and board with you? A. *Supposed* to pay me $50 a month. Q. *He agreed** to pay $50 a month for the— . . . A. He agreed with me to pay me $50 a month."; and (d) the test of what the law requires to toll the Statute of Limitations is set forth in *Huffman Estate No. 3*, 349 Pa. 59, 36 A. 2d 640; *Barr v. Luckenbill*, 351 Pa. 508, 41 A. 2d 627.

Decree reversed and case remanded for further proceedings in conformity with this opinion. Costs to abide the event.

---

* Italics, ours.